During the pre-dawn hours of December 24, 1980, Victor Kennedy and Darrell Grayson went to the home of Mrs. Annie Laura Orr with the intent to burglarize the same. Mrs. Orr was an eighty-six year old widow who lived alone in her home in Montevallo, Alabama. Kennedy and Grayson broke into Mrs. Orr's house and found her sleeping. The two men put a pillowcase over Mrs. Orr's head and wrapped tape tightly around the pillowcase. After being repeatedly terrorized, assaulted and raped, Mrs. Orr died of suffocation.
On January 16, 1981, Kennedy was indicted for the capital offense of "nighttime burglary of an occupied dwelling when any of the occupants is intentionally killed by the defendant" as defined in § 13A-5-31(a)(4) Code of Alabama (1975). Kennedy was tried for this offense in February of 1982 and the jury found him guilty of the capital offense and recommended the death penalty following the sentencing hearing. The trial judge also conducted a sentencing hearing, at which he accepted the jury's recommendation and sentenced the appellant to death.
Kennedy's conviction and death sentence were affirmed by this court in Kennedy v. State, 472 So.2d 1092
(Ala.Crim.App. 1984). The Alabama Supreme Court affirmed this court's judgment in Ex parte Kennedy, 472 So.2d 1106 (Ala. 1985), cert.denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985).
On January 14, 1986, Kennedy filed a Petition for Writ of Error Coram Nobis and/or Motion for Relief from Judgment. Kennedy filed an amendment to his petition on June 5, 1987. An evidentiary hearing was held on June 9, 1987 concerning the matters raised in the petition and the amendment. A second amendment to the petition was filed by Kennedy, with the permission of the court, after the evidentiary hearing. *Page 216 
On July 31, 1987, the court denied Kennedy's petition. On December 7, 1987, on joint motion of both parties, this court entered an order remanding the case to the Shelby County Circuit Court for specific factfindings concerning the issues raised in the petition. On May 12, 1988, the trial court issued a new order (with factfindings) denying Kennedy's petition. Kennedy, the petitioner, now appeals from the denial of his Petition for Writ of Error Coram Nobis and/or Motion for Relief from Judgment.
 I
The petitioner contends that he was denied the effective assistance of counsel.
 "In order to establish a claim of ineffective assistance of counsel a defendant must prove, first,
 " 'that counsel's performance was so deficient as to fall below an objective standard of reasonableness. Counsel's conduct must be considered within the context of the facts of the particular case and as of the time of the alleged misconduct. Second, petitioner must show that counsel's deficient performance prejudiced the defense and deprived petitioner of a fair trial. Prejudice is shown when, absent the errors, there is a reasonable probability that the jury would have had a reasonable doubt respecting guilt.' Ex parte Baldwin, 456 So.2d 129, 134 (Ala. 1984), affirmed, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985), applying the test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "A defendant must prove that counsel's incompetence resulted in prejudice.
 " 'In order to establish ineffective representation, the defendant must prove both incompetence and prejudice. [Strickland v. Washington], 466 U.S., at 688, 104 S.Ct., at 2065. There is a strong presumption that counsel's performance falls within the "wide range of professional assistance," id., at 689, 104 S.Ct., at 2065; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Id., at 688-689, 104 S.Ct., at 2065-2066. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential. Id., at 689, 104 S.Ct., at 2065. The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., at 694, 104 S.Ct., at 2068. See also, id., at 695, 104 S.Ct., at 2069 (Where a defendant challenges his conviction, he must show that there exists "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"). And, in determining the existence vel non of prejudice, the court "must consider the totality of the evidence before the judge or jury." Ibid.', Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 2586-87, 91 L.Ed.2d 305 (1986).
 "A defendant must show that counsel's unprofessional error resulted in injury."
Hope v. State, 521 So.2d 1383 (Ala.Crim.App. 1988).
The petitioner makes several allegations of ineffective assistance of counsel. Each will be addressed separately.
 (A)
The petitioner contends that his trial counsel was ineffective because he failed to object to the testimony of Kevin Noppinger, a forensic serologist, regarding the amount of semen in and around the victim. At trial, Noppinger testified that, in his opinion, the quantity of semen present at the scene indicated that it was caused by multiple ejaculations.
The petitioner alleges that his trial counsel should have objected to this testimony because Noppinger was testifying on matters *Page 217 
outside the area of his expertise and because this testimony implied that the petitioner, as well as his co-defendant, had raped the victim. In rejecting this contention, the coram nobis court stated:
 "(C) In paragraphs 3, 8, and 9 of the petition, petitioner alleged that his trial counsel was ineffective for allowing a forensic serologist, Kevin Noppinger, to testify outside the area of his expertise as to the quantity of seminal discharge. Petitioner presented no evidence in support of this claim. Respondent presented the testimony of a forensic serologist, Larry Huys, and the trial transcript. Petitioner failed to establish that trial counsel was ineffective for failing to challenge Noppinger's testimony.
 "At trial, Noppinger testified that the quantity of semen found at the scene was consistent with multiple ejaculations. Contrary to petitioner's assertions, Noppinger never testified that the quantity of semen established ejaculations by more than one person.
 "Trial counsel was not ineffective for failing to object to this testimony because Noppinger was not testifying outside of his area of expertise as a forensic serologist. At the coram nobis hearing, another forensic serologist, Larry Huys, testified that he had, as an expert, testified to matters involving the quantity of seminal discharge based on his examination of evidence. Huys had also reviewed Noppinger's testimony at trial and, in his expert opinion, that testimony was within Noppinger's expertise based on his training and experience.
 "This Court finds that Noppinger was qualified to give testimony concerning multiple ejaculations based on the amount of semen discovered in his examination of the physical evidence in the instant case.
 "Denson was not ineffective for failing to object to testimony that was properly given at trial. Additionally, it should be noted that this testimony supported petitioner's statement about Grayson raping the victim more than once. This testimony actually supported at least a portion of petitioner's statement that while he was in the victim's house, he was not ever physically in the victim's bedroom, but merely watched Grayson attack and rape the victim."
(SP 14-15)
We therefore agree with the court's conclusions. Noppinger testified at trial that the amount of semen present at the scene was caused by multiple ejaculations. At the coram nobis hearing, another forensic serologist testified that Noppinger's testimony concerning the amount of semen present at the scene was within the expertise of Noppinger based on his experience and training. Defense counsel's performance cannot be deemed deficient by his failing to object to evidence which was properly admissible at trial. See Zeigler v. State,443 So.2d 1303 (Ala.Crim.App. 1983), cert. denied, 443 So.2d 1303
(Ala. 1984).
Furthermore, Noppinger did not testify that the semen was caused by two or more persons. He merely testified that the semen was the result of multiple ejaculations. Thus we do not find that trial counsel's performance was deficient with regard to this contention. To the contrary, his performance on this issue was correct.
 (B)
The petitioner asserts that his trial counsel was deficient because he failed "to utilize or require to be utilized" the process known as "DNA fingerprinting."[1]
In addressing this issue, the coram nobis court wrote:
 "(E) In paragraphs 7 and 14 of the petition, petitioner alleged that his trial *Page 218 
counsel was ineffective because he failed to require or obtain 'DNA fingerprinting', which allegedly would have conclusively identified Grayson as the person who raped and murdered the victim. In support of this claim petitioner presented no evidence but relied upon the cross-examination of Huys. Respondent relied upon the testimony of Huys.
 "Huys testified that 'DNA fingerprinting' is an identification procedure based on analysis of DNA fragments from a cell in a stain. Analysis of the DNA fragments permits identification of the person who deposited the cell.
 "Huys, who has over twelve years experience as a forensic serologist, described 'DNA fingerprinting' as a relatively recent development and testified that even today few can perform such an analysis. He testified that the Department of Forensic Sciences does not do 'DNA fingerprinting' and that this is not, and was not, routinely performed in Alabama. Huys did not think that any laboratory in Alabama was doing 'DNA fingerprinting' in 1980 but it was possible that a lab somewhere else might have been. Trial counsel testified that he was not familiar with 'DNA fingerprinting.'
 "This Court finds that Denson was not ineffective for failing to request such an examination some seven years ago. Denson requested funds for experts and investigators and filed motions for discovery of any scientific evidence available. Denson could not be faulted for not requesting some type of test that, if it existed in 1980, was not available in Alabama or this country at the time of trial. Trial counsel's performance was not deficient for failing to seek a test in 1980 which is still not generally available in Alabama in 1987."
(S.R. 16-17)
According to our research, the process of DNA fingerprinting was first used in a criminal trial in a rape case in England in 1985, see Thompson, DNA's Troubled Debut, 8 Cal.Law., June, 1988 at 36, 40, although it was used under laboratory conditions for paternity testing previously. Id., at 41.
Only last year, three private companies in the United States began offering DNA testing for criminal cases. Id., at 41. Considering this information and the testimony of Dr. Huys at the coram nobis hearing, we fail to see how trial counsel was ineffective by failing to request or obtain a test which had never been used in a criminal case in the United States at the time of this trial (1982) and a test which he could not have obtained at that time. Furthermore, trial counsel testified at the coram nobis hearing that he had never heard of DNA fingerprinting at the time of the petitioner's trial. (R. 32). DNA fingerprinting is a recent phenomenon and it is doubtful that many people knew of this process in 1982.
Furthermore, while at least nine states (including Alabama) have admitted DNA evidence at trial, we are aware of only one appellate court which has ruled on its admissibility. SeeAndrews v. Florida, 533 So.2d 841 (Fla.App. 5 Dist. 1988). (The court held that admission of "genetic fingerprint" evidence at trial was proper). Thus, even if the DNA test had been available to the petitioner at the time of his trial, we cannot say that the test would have been admissible at that time under the test of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923)[2]
which Alabama and most jurisdictions follow. Thus, this issue is without merit.
 II (A)
During the prosecutor's closing argument during the guilt phase of the trial, the following occurred:
 "Think of it. Think of the horror. He said he went to his mother's house on Christmas Eve. He walked in the front door. It was unlocked. That is unusual *Page 219 
because the blinds were still closed. No big deal. He went on through the living room that looked perfectly natural, he called out to his mom, hey, Mom I'm here, or something of that effect, I'm sure. And he didn't hear any response. But he doesn't think anything.
 "He goes back into the kitchen. The kitchen is in a mess. It is ransacked. It is in complete disarray. He sees that kitchen. He hasn't heard his mother. He is getting worried. He is getting scared. He starts crying out for his mother. He testified. I called out again and again and I started to go into her bedroom and I called out and she did not answer. And when I got to her bedroom on Christmas Eve, 1980, that is what I saw.
 "And he testified to you that is exactly what he saw. That is what he is going to see in his mind for the rest of his living days.
 "It is very easy to have sympathy for that man sitting over there, because we see him sitting there, we see him breathing, we know he is a human being. He is sitting there. It is easy to feel sorry for him but, ladies and gentlemen, what about that family? What about Mrs. Orr?"
(R. 169) (emphasis added)
The petitioner contends in his second amendment to the petition that the underscored portion of the prosecutor's argument was in violation of Booth v. Maryland, 482 U.S. 496,107 S.Ct. 2529, 96 L.Ed.2d 440 (1987),[3] which held that a Maryland statute, which required the introduction of a victim impact statement at the sentencing phase of a capital murder trial, violated the Eighth Amendment to the United States Constitution.
In its opinion, the U.S. Supreme Court "reject[ed] the contention that the presence or absence of emotional distress of the victim's family, or the victim's personal characteristics, are proper sentencing considerations in a capital case." Booth, 107 S.Ct. at 2535 (emphasis added).
This issue is not preserved for our review because defense counsel failed to object to the allegedly improper argument at trial or on appeal. Issues which " 'could have been raised at trial or on direct appeal and were not' are not cognizable in a coram nobis proceeding." Hope v. State, 521 So.2d 1383
(Ala.Crim.App. 1988) (citations omitted). This rule applies to constitutional issues as well. Ex parte Ellison, 410 So.2d 130
(Ala. 1982). Thus, this issue is not properly before this court.
 (B)
The petitioner further alleges his trial counsel was ineffective because he failed to object to the prosecutor's argument as quoted above in subsection (A) on the grounds of the principles that were later pronounced in Booth.
We do not find it necessary to determine whether trial counsel's failure to object to the prosecutor's closing argument was deficient representation because we conclude that the petitioner has failed to meet the prejudice prong of theStrickland test. The petitioner in this case has not shown that "but for" trial counsel's failure to object to the prosecutor's argument, "the result of the proceeding would have been different." Strickland, 104 S.Ct. at 2068. There must be a "reasonable probability" that, but for the prosecutor's argument, the verdict would have been different. Jackson v.State, 501 So.2d 542 (Ala.Crim.App. 1986), cert. denied,501 So.2d 542 (Ala.), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242,97 L.Ed.2d 746 (1987).
In reviewing the evidence in this case, we do not find that there is a "reasonable probability" that, but for the prosecutor's argument, the jury would have returned a different verdict or recommended a different sentence.
The evidence of the petitioner's participation in this heinous crime is overwhelming, see Kennedy, and the death sentence was "unquestionably appropriate" for this petitioner.Id., at 1105. The allegedly improper *Page 220 
remarks by the prosecutors were brief and something the jury would naturally infer on its own from the testimony of Mrs. Orr's son. We fail to see how a jury would have reached a different conclusion even without the allegedly improper prosecutorial argument. There is no merit to this issue or claim.
 III
The petitioner alleges, in his first amendment to his petition for writ of error coram nobis, that he was denied the effective assistance of counsel on coram nobis review because he was not provided expense money to hire experts to assist and advise him during the coram nobis proceedings. In his order denying the petition, the trial judge stated:
 "(A) Petitioner alleges that he was denied effective assistance on coram nobis review because funds were not available to compensate experts to advise and assist coram nobis counsel. Petitioner was not denied effective assistance of counsel on coram nobis because he has no right to counsel beyond counsel appointed pursuant to Code of Alabama 1975, § 15-12-23.
 "In Pennsylvania v. Finley, 55 U.S. L.W. 4612 [481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539] (May 19, 1987), the United States Supreme Court held that there is no constitutional right to the assistance of counsel in state collateral attacks on convictions. Id., at 4613 [481 U.S. at 553, 107 S.Ct. at 1992]. The Court said:
 "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks to their convictions, see Johnson v. Avery, 393 U.S. 483, 488 [, 89 S.Ct. 747, 750, 21 L.Ed.2d 718] (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. Wainwright v. Torna, 455 U.S. 586 [102 S.Ct. 1300, 71 L.Ed.2d 475] (1982); Ross v. Moffitt, 417 U.S. 600
[94 S.Ct. 2437, 41 L.Ed.2d 341] (1974). We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process. See Boyd v. Dutton, 405 U.S. 1, 7, n. 2 [92 S.Ct. 759, 762, n. 2, 30 L.Ed.2d 755] (1972) (POWELL, J., dissenting)."
Id.
 "The Court then rejected the argument, based on Evitts v. Lucey, 469 U.S. 387 [105 S.Ct. 830, 83 L.Ed.2d 821] (1985), that a petitioner, who has received appointed counsel in a state collateral attack pursuant to state law, has a right to effective assistance from appointed counsel. Id., at 4614 [481 U.S. at 555-559, 107 S.Ct. at 1994-95]. The Court held that Evitts was distinguishable on two grounds. First, Evitts was based on the existence of a right to appointed counsel on appeal which right does not exist in collateral attack. Id. Second, the petitioner in Finley, unlike Evitts, was not deprived of any state created right to counsel. Id.
 "Both of the grounds relied on in Finley to deny that petitioner's claim of a right to effective assistance on collateral attack are applicable to the case at bar. Petitioner also has no right to appointed counsel and, thus has no right to effective assistance of counsel. Also, petitioner has received counsel to the full extent contemplated by Code of Alabama 1975, § 15-12-23
and has not been denied any state created right to counsel. Petitioner's assertion that statutory limits on fees to collateral attack counsel deprive him of his right to effective assistance of counsel is without merit."
(SR 18-19)
The coram nobis court was correct in its application ofPennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990,95 L.Ed.2d 539 (1987) to this issue. In determining whether the petitioner in Finley was denied the effective assistance of counsel in a State *Page 221 
post conviction proceeding, the United States Supreme Court explicitly held that there is no constitutional right to counsel on collateral attack. In Finley, an attorney was appointed for the petitioner, as required by State law, to represent her during post conviction proceedings. See alsoWhitley. The Supreme Court held that, since the petitioner had no constitutional right to an appointed attorney in the State collateral review proceedings, her attorney did not have to meet the constitutional standards of Anders v. California,386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). See Whitley v.Muncy, 823 F.2d 55 (4th Cir. 1987), petition for cert. filed, (U.S. July 2, 1987) (No. 87-4001).
The petitioner in this case was appointed counsel pursuant to § 15-12-23, Code of Alabama 1975. He is entitled to no more. He has no constitutional right to counsel on collateral attack, and thus, his attorney did not have to meet the constitutional standards for effective assistance of counsel as set out inStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). See also, Donald v. State, 456 So.2d 142
(Ala.Crim.App. 1984) (a pre-Finley case in which this court held that since "a petitioner has no constitutional right to counsel in a coram nobis proceeding," he "could not be deprived of effective assistance of counsel by anything his counsel, retained or appointed, might have done at this hearing.")
Thus, this issue is without merit.
For the reasons stated above, this cause is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The petitioner also refers to "DNA fingerprinting" as "electrophoresis". Our research indicates that the two terms are not interchangeable. DNA fingerprinting "matches a person's unique genetic signature contained in the chemical structure of his chromosomes with a sample of his blood, semen, hair, skin or 99 percent of the cells in his body." Anderson, UpstateJudge orders Genetic Fingerprints, 200 N.Y.L.J., July 27, 1988, at 1, col. 5. The "Electrophoresis process is an important step in separating the DNA fragments." Andrews v. State,533 So.2d 841, 846, fn. 4. (Fla.App. 5 Dist.)
[2] The Frye rule states that evidence of a scientific process or technique is admissible if it is generally accepted as accurate in the relevant scientific community. In Andrews, the Florida court rejected the Frye rule and adopted a relevancy/reliability approach whereby the court may look to a variety of factors to determine the reliability of a scientific test.
[3] The decision in Booth was rendered on June 15, 1987. The second amendment to the petition raising the Booth issue was filed on June 17, 1987.