United States Court of Appeals,

Eleventh Circuit.

No. 94-6386.

Victor KENNEDY, Petitioner-Appellee, Cross-Appellant,

v.

Tommy HERRING, Commissioner of the Alabama Department of Corrections, Respondent-Appellant, Cross-Appellee.

May 23, 1995.

Appeals from the United States District Court for the Northern District of Alabama. (No. 91-C-106-S), U.W. Clemon, Judge.

Before TJOFLAT, Chief Judge, ANDERSON and COX, Circuit Judges.

COX, Circuit Judge:

Victor Kennedy seeks relief under 28 U.S.C. § 2254 from a conviction and death sentence imposed in Shelby County, Alabama. The district court granted Kennedy relief on his claims of a *Brady* violation and ineffective assistance of counsel at sentencing, and the State appeals. Kennedy cross-appeals the district court's denial of relief on his *Hitchcock* claim. We reverse the grant of relief on the *Brady* and ineffective assistance of counsel claims and affirm the denial of relief on the *Hitchcock* claim. We also note on our own accord that the district court did not address Kennedy's claim that the trial court improperly denied his motion to suppress statements made to the police and probation officers, and we therefore remand for the district court to consider that claim.

I. Background

A. Facts

Kennedy was convicted for the murder of 86-year-old Annie Orr

on December 23, 1980 at Orr's home in Montevallo, Alabama. Orr was badly beaten, repeatedly raped, and finally suffocated slowly on her bed under a pillowcase taped tightly around her head. The coroner testified that the tape, not the pillowcase, caused her asphyxiation.

Kennedy made three statements to the police, all of which were admitted in evidence. In the statements, Kennedy admitted to accompanying Darrell Grayson, whom Orr had employed, to Orr's house in order to steal money for Christmas. Both had been drinking heavily, and Kennedy had a gun. According to the statements, Kennedy entered the house with Grayson and searched the house for cash. Kennedy stated that he saw Grayson having intercourse with Orr, and that he entered Orr's bedroom at this time to look for his gun. Kennedy did not admit, however, to taping the pillowcase, or to having been in Orr's bedroom when the tape was wrapped around Orr's head.

Apart from Kennedy's statements, the state's evidence was circumstantial. Playing cards found in Orr's house and on the path between Orr's house and Kennedy's nearby residence corresponded to the missing cards of a deck seized at Kennedy's residence. Hairs collected from Orr's body and bedroom, where she was found, proved to be those of a black male. Both Kennedy and Grayson are black, but forensic analysts could not identify the hairs as belonging to either of them. Serological analysis did not indicate that any of the semen present was Kennedy's, although there was too much to have resulted from one ejaculation. At least some of the semen, however, was shown to be Grayson's.

Grayson made two statements to the police, neither of which was introduced at Kennedy's trial. Grayson's story differed from Kennedy's. According to Grayson, he and Kennedy had gone to Orr's house at Kennedy's suggestion to rob Orr, and Kennedy had taken a gun. Upon breaking into Orr's house, they both went to Orr's bedroom. Grayson's statements inconsistently recounted the order of events in Orr's bedroom, but said that at some time while the two were in the house Kennedy grabbed Orr by the throat, raped her, struck her head with his fist, and held her down as Grayson wrapped the tape around the pillowcase. Grayson also confessed to having raped Orr, possibly twice.

B. Procedural History

Kennedy was tried and convicted separately from Grayson in the circuit court of Shelby County, Alabama. Agreeing with the jury's recommendation, the court sentenced Kennedy to death. State appeal courts affirmed Kennedy's conviction and sentence, and the U.S. Supreme Court denied certiorari. *Kennedy v. State,* 472 So.2d 1092 (Ala.Crim.App.1984), *aff'd,* 472 So.2d 1106 (Ala.), *cert. denied,* 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). Kennedy then petitioned the Shelby County circuit court for a writ of error coram nobis, which the court denied. The Alabama Court of Criminal Appeals affirmed, and the Alabama and U.S. Supreme Courts denied certiorari. *Kennedy v. State,* 545 So.2d 214 (Ala.Crim.App.), *cert. denied,* 545 So.2d 214 (Ala.), *and cert. denied,* 493 U.S. 900, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989).

Kennedy then filed this petition for habeas corpus under 28 U.S.C. § 2254, asserting twenty-one claims for relief. The

district court granted relief on two claims. First, it concluded that Kennedy's trial counsel had provided unconstitutionally ineffective assistance at the sentencing phase of the trial by failing to investigate and present evidence of Kennedy's low intelligence, abusive upbringing, and minor role in the offense. Second, the district court granted relief because the prosecution failed on request to provide Kennedy with Grayson's statements, in violation of Kennedy's due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1]

II. Issues

The State raises two issues on this appeal. First, it contends that Kennedy's *Brady* claim merits no relief. Second, the State argues that procedural default bars consideration of the ineffective assistance of counsel claim on which the district court granted relief.

In his cross-appeal, Kennedy raises only one issue. He challenges the district court's conclusion that the nonretroactivity doctrine bars relief on Kennedy's claim based on *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

III. Standards of Review

Although the district court held no evidentiary hearing, this court defers to the district court's findings of fact that are not clearly erroneous. *Anderson v. City of Bessemer City,* 470 U.S.

---

[1]The 21 claims asserted in Kennedy's petition, as stated by Kennedy, are attached as an appendix to this opinion. This appeal concerns only claims I, X, and XIII. The district court denied relief on the remaining 18 claims, except for claim XIV, which the district court did not address.

564, 574, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985). However, we review de novo both questions of law and mixed questions of law and fact. *Cochran v. Herring,* 43 F.3d 1404, 1408 (11th Cir.1995); *Nutter v. White,* 39 F.3d 1154, 1156 (11th Cir.1994). Whether evidence is material for *Brady* purposes is such a mixed question, *Duest v. Singletary,* 967 F.2d 472, 478 (11th Cir.1992), as is whether jury instructions impermissibly limited the jury's consideration of mitigating evidence, *see Waters v. Thomas,* 46 F.3d 1506, 1524-27 (11th Cir.1995) (en banc).

IV. Discussion

A. The *Brady* Claim

The district court determined that the prosecution had violated Kennedy's due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it failed on request to allow Kennedy a useful examination of Grayson's statements, which exculpated Kennedy and were material to issues at trial. We conclude that the statements would not have changed the case's outcome and that therefore the prosecution did not violate *Brady.*[2] Accordingly, we reverse.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196-97. A *Brady* violation

---

[2]The parties dispute whether the prosecution in fact produced Grayson's statements and whether 28 U.S.C. § 2254(d) requires this court to defer to state court findings about production. However, because we conclude that the statements were not material, we need not address whether they were in fact suppressed. *See Nelson v. Nagle,* 995 F.2d 1549, 1555 (11th Cir.1993).

requires a showing of three elements: (1) suppression by the prosecution (2) of exculpatory evidence (3) material to the issues at trial or sentencing. *Nelson v. Nagle,* 995 F.2d 1549, 1555 (11th Cir.1993). The third element is satisfied "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

Kennedy contends that Grayson's statements would have cast doubt on Kennedy's intent to kill, an element of the capital murder with which Kennedy was charged. The theory of Kennedy's trial defense was that Kennedy was in Orr's house when the murder happened, and even may have raped Orr, but that Kennedy did not apply the tape and thus did not intentionally kill her. Because Grayson's statements have Kennedy restraining Orr, but not taping the pillowcase, Kennedy argues that Grayson's statements support this theory. Kennedy concedes that he still might have been found guilty of burglary or murder even if the prosecution had failed to show intent to kill, but he asserts that the jury would not have found him guilty of capital murder. Furthermore, Kennedy argues that even if the jury had found him guilty of capital murder, Grayson's description of Kennedy's minor role in the murder would have been mitigating. Therefore, he contends, the statements were material to his sentence.

Our review of the record convinces us that Kennedy would not, in fact, have benefited from Grayson's statements. The jury heard

several pieces of evidence linking Kennedy to the crime. Kennedy's own statement admitted his presence in Orr's house at the time of the murder. The hairs of a black person were found on and around the body. The playing cards discovered in Orr's house exactly filled the gaps in a deck seized from Kennedy's house. The quantity of semen on and around the victim's body suggested multiple rape. Finally, human blood was present on the shirt Kennedy wore during the event. On this evidence, the jury found that Kennedy intentionally killed Orr.

If the prosecution had produced Grayson's statements and the defense had introduced the statements in evidence, the jury would also have heard that Kennedy had raped Orr, beaten her, and held her down while Grayson wound the masking tape fatally tight. Kennedy is correct that without Grayson's story, the jury might have inferred that Kennedy applied the tape. However, it is equally true that none of the evidence actually introduced at the trial prevented the jury from finding that Kennedy had little to do with taping the pillowcase. Grayson's statements, on the other hand, would have provided direct evidence implicating Kennedy in the fatal taping.

In this evidentiary context, we find unpersuasive Kennedy's argument that Grayson's statements exculpated Kennedy. We doubt that the jury, given the direct evidence the statements provided that Kennedy held the victim down while Grayson taped the pillowcase, would have found Kennedy less culpable than Grayson. Any possibility of such a finding is sufficiently remote that it does not "undermine confidence in the outcome." *Bagley,* 473 U.S.

at 682, 105 S.Ct. at 3383. A jury would more likely find Grayson's statements to be persuasive evidence of Kennedy's intent to kill.

Grayson's statements likewise would have offered no evidence in support of mitigation at the sentencing phase. To the contrary, if Grayson's statements had been introduced, it would have been the most telling evidence of Kennedy's culpable involvement in the crime. The evidence of Kennedy's participation in the rape and beating would weigh more in aggravation than mitigation. Furthermore, the only clearly mitigating evidence in the statement—that of Kennedy's intoxication—was cumulative. In sum, there is no reasonable probability that the defense's possession of Grayson's statements would have changed the result of the proceedings. Kennedy therefore merits no relief on his *Brady* claim.

B. Ineffective Assistance of Counsel

The district court granted Kennedy relief on his claim that his trial counsel was unconstitutionally ineffective in failing to present evidence at the sentencing phase of Kennedy's low I.Q. and traumatic childhood. We conclude that the claim is procedurally barred.

Kennedy asserted these two penalty-phase instances of ineffective assistance for the first time in his federal habeas petition. In the Alabama coram nobis proceedings, Kennedy alleged only that trial counsel was ineffective for failing to object to certain expert testimony, failing to challenge the exclusion of religious objectors to the death penalty from the jury, failing to have the body fluids on the murder scene DNA-typed, and failing to

object to a prosecutorial argument that violated *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The state petition did not mention any deficiencies in counsel's performance at the sentencing stage. Neither did Kennedy present any evidence of sentence-phase ineffective assistance of counsel in the state coram nobis hearing. The state coram nobis courts did not consider or make findings of fact concerning sentence-phase assistance of counsel.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law...." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules. *See Teague v. Lane,* 489 U.S. 288, 299, 109 S.Ct. 1061, 1069, 103 L.Ed.2d 334 (1989).

In this case, Kennedy has defaulted under Alabama procedural rules by omitting from his state coram nobis petition the instances of ineffective assistance of counsel advanced in this § 2254 petition. Alabama coram nobis rules forbid consideration of grounds in later petitions that could have been, but were not, raised in the first coram nobis petition. Ala.R.Crim.Pro. 32.2(b); *Wilkins v. State,* 629 So.2d 705, 706 (Ala.Crim.App.1993). This prohibition of successive petitions on different grounds bars

consideration of newly raised instances of ineffective assistance of counsel even if the petitioner claimed other instances of ineffective assistance of counsel in the first petition. *Weeks v. Jones,* 26 F.3d 1030, 1043 (11th Cir.1994) (applying Alabama's successful petition bar).[3] Because Kennedy has thus defaulted his claim of ineffective assistance of counsel, this court will consider the claim only if Kennedy can show cause to excuse the default and prejudice from it. *Id.* "Cause" sufficient to excuse a procedural default "requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).

The district court concluded that coram nobis counsel's reliance on *Brand v. Lewis,* 784 F.2d 1515 (11th Cir.1986), was cause to excuse the default. The court read *Brand* to hold that failure to present some instances of ineffective assistance to the state courts does not bar federal consideration of those instances. *See id.* at 1517.[4] According to the district court, because *Brand* was the law of this circuit during the state coram nobis proceedings, it was an external factor causing the default. We disagree. Accepting for the argument's sake the district court's finding that coram nobis counsel relied on *Brand,* this reliance

---

[3]We note that state rules also time-bar Kennedy's new claim of ineffective assistance of counsel. Under Alabama's Temporary Rule of Criminal Procedure 20.2(c), the statute of limitations ran on all his federal constitutional claims April 1, 1989.

[4]This court has held that *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 7-10, 112 S.Ct. 1715, 1719-20 (1992), effectively overruled this holding of *Brand. Footman v. Singletary,* 978 F.2d 1207, 1210 (11th Cir.1992).

could not be cause to excuse a state procedural default. *Brand* concerned *federal* exhaustion doctrine, not *state* procedural rules. Counsel's reliance on federal law cannot excuse a failure to comply with state procedure.

In alternate support of the district court's holding, Kennedy advances another cause for the procedural default. He contends that Alabama's insufficient funding of coram nobis counsel prevented counsel from investigating and raising the claim. This alleged cause is equally unavailing for two reasons. First, a lack of money is not an external impediment. *See LaRette v. Delo,* 44 F.3d 681, 688 (8th Cir.1995). Second, finding cause in a lack of resources would be inconsistent with the settled principle that a state need not provide counsel in collateral proceedings, even for petitioners under sentence of death. *Murray v. Giarratano,* 492 U.S. 1, 7, 10, 109 S.Ct. 2765, 2768-69, 2770, 106 L.Ed.2d 1 (1989). It makes no sense to say that the state need not provide counsel at all, but that if the state opts to provide counsel, the state must fund counsel adequately or face the possibility of excusing procedural defaults.

Kennedy thus has advanced no cognizable cause to excuse his failure to present the currently alleged instances of ineffective assistance of counsel to the state coram nobis court, and we therefore need not consider whether the default prejudiced Kennedy. *See Engle v. Isaac,* 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982). We conclude that Kennedy's procedural default is unexcused.

C. *Hitchcock* Error

The district court denied Kennedy relief on his claim that the jury instruction violated his Eighth Amendment rights under *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), because the court concluded that the nonretroactivity principle of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), deprived Kennedy of *Hitchcock* 's benefit. We determine to the contrary that *Hitchcock* is retroactively applicable. Nonetheless, we affirm the district court's denial of relief because the claim lacks merit.

As a preliminary matter, we hold that *Hitchcock* announced no new rule. *Hitchcock* 's result was dictated by the Supreme Court's earlier rulings in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), both of which issued before Kennedy's conviction became final. *See Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989). The *Hitchcock* claim therefore escapes a *Teague* bar. *See Stringer v. Black,* 503 U.S. 222, 227-28, 112 S.Ct. 1130, 1135, 117 L.Ed.2d 367 (1992).

Under *Hitchcock* and related cases, "the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence." *Hitchcock,* 481 U.S. at 394, 107 S.Ct. at 1822 (interior quotations omitted). Thus, jury instructions must permit full consideration of mitigating circumstances. *Penry,* 492 U.S. at 327-28, 109 S.Ct. at 2951. An instruction is erroneous if a reasonable likelihood exists that the jury has applied it in a way that prevents the consideration of constitutionally relevant

evidence in mitigation.  *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).

Kennedy challenges the following instruction by the trial judge:

> In evaluating the testimony presented at this sentence hearing, you are to abide by the same rules of law which I have given you concerning the evaluation of testimony presented during the guilt phase of the trial.
>
> Any determination from the guilt phase of this trial that is considered by you in determining the aggravating and mitigating circumstances should also be considered by you to be subject to the same rules.

(R. 6-17-1157).  By this instruction, Kennedy contends, the trial judge unconstitutionally prevented the jury from considering the mitigating circumstance of Kennedy's extreme intoxication.  During the guilt phase of the trial, the jury was instructed that it could consider the defendant's intoxication if the intoxication would negate an element of the offense. [5]  Kennedy argues that the challenged instruction incorporated this intoxication instruction,

---

[5]The trial judge's exact words were:

> Intoxication of the defendant, whether voluntary or involuntary, may be considered by the jury if relevant to consider as negating an element of the offense charged, such as intent.  However, being unaware of a risk because of voluntary intoxication is immaterial in a consideration of whether the defendant acted recklessly where recklessness is an element of the offense charged, or a lesser included offense.
>
> ....
>
> Intoxication, other than involuntary intoxication, is not a defense to a criminal charge but may be considered by the jury, if relevant, on the question of whether the fact of intoxication negates an element of the offense charged, such as intent, but not the element of recklessness.

(R. 5-8-1076-77.)

and that the jury thus would have supposed itself unable to consider evidence of Kennedy's intoxication on the night of the crime.

Kennedy's claim is nearly identical to the petitioner's in *Waters v. Thomas,* 46 F.3d 1506 (11th Cir.1995) (en banc).  In *Waters,* the petitioner challenged a similar sentence-phase charge that imported the "rules of law" given at the guilt phase into the sentencing phase.  *Id.* at 1525.[6]  Waters had pleaded a defense of insanity, and at the guilt phase the judge had accordingly instructed the jury in the right-wrong standard of insanity.  *Id.* Waters contended that the importation of the stringent right-wrong standard into the sentencing phase prevented the jury from considering Waters's mental illness as mitigation.  *Id.*

The *Waters* court rejected the challenge, and we do as well. As the *Waters* court noted, "our evaluation must focus not upon the challenged instruction in isolation, but upon the entire sentencing instruction and the entire sentencing proceeding." *Id.*  Because of two circumstances in Kennedy's sentencing proceeding, we conclude that there is no reasonable likelihood that the jury felt constrained in its consideration of mitigating evidence of Kennedy's intoxication.

---

[6]The instruction challenged in *Waters* read:

> The instructions given you earlier in this case and the rules of law outlined to you in this portion of the instructions apply also to your deliberations as to penalty, that is the rules of law outlined to you in the Charge that I gave you earlier, also apply to your deliberations in arriving at the penalty or punishment in this case.

*Id.*

First, the guilt-phase instruction on intoxication related only to the determination of guilt, and the remainder of the sentencing-phase instructions would have made clear to the jury that it was not one of the generally relevant rules of law that the challenged instruction incorporated into the sentence phase. In the guilt phase, the judge did not instruct the jury that intoxication was always irrelevant. Rather, the jury heard that "intoxication is immaterial in a consideration of whether the defendant acted recklessly...." (R. 5-8-1076.) Recklessness was not an issue in the sentencing phase, and thus it is unlikely that the jury would have extrapolated the intoxication instruction to apply in the sentencing phase. Furthermore, immediately after telling the jurors that they were to abide by the same rules of law they heard in the guilt phase, the judge reiterated guilt-phase instructions that the jurors were the "sole and exclusive judges of the evidence," and went on to explain how the jury was to assess witnesses' credibility. (R. 6-17-1157-58.) In this context, the jury would probably have understood the challenged instruction to mean "that the court was incorporating those instructions from the earlier stage that were applicable to sentencing," and not all the guilt-phase instructions whether relevant or not. *Waters,* 46 F.3d at 1527.

Second, the sentence-phase instructions themselves explicitly gave the jury free rein to consider any mitigating circumstances and any evidence to support them. Immediately before giving the challenged instruction, the trial judge told the jury that:

> In addition to the mitigating circumstances I have just read to you, you may also consider as a mitigating

circumstance any aspect of the defendant's character and life and any of the circumstances of the capital offense which tend to indicate that the defendant should not be sentenced to death.

A mitigating circumstance must [*sic* ] not have to be included in the list which I have just read to you in order for it to be considered by you.

A mitigating circumstance considered by you should be based in the evidence you have heard. If you are satisfied from the evidence presented during the guilt stage of the trial or during this sentence hearing that a mitigating circumstance existed in this case, then you may consider it.

(R. 6-17-1156-57.) For the jury to have understood the challenged instruction to limit its consideration of Kennedy's intoxication, the jury would have had to ignore these three paragraphs concerning mitigation. It would also have had to remember exactly what the judge had said about intoxication at the guilt phase and then unreasonably extrapolate that intoxication instruction to apply it to their weighing of aggravators and mitigators. We find it improbable that the jury would have done so.

Given these two circumstances, there is no reasonable likelihood that the trial court's instruction incorporating the guilt-phase intoxication instruction would have prevented the jury from considering all relevant evidence in mitigation. We therefore affirm the district court's denial of relief on the *Hitchcock* claim.

V. Conclusion

For the foregoing reasons, we REVERSE the district court's grant of relief on the *Brady* claim and the claim of ineffective assistance of counsel. However, we AFFIRM the district court's denial of relief as to the *Hitchcock* claim. We REMAND to the district court for the limited purpose of allowing it to consider

Claim XIV of Kennedy's petition, concerning the trial court's denial of Kennedy's motion to suppress his statements.

AFFIRMED in part; REVERSED in part; REMANDED in part.

APPENDIX

I. Mr. Kennedy was denied effective assistance of counsel at trial in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

II. The prosecutor's pervasive improper conduct rendered Mr. Kennedy's trial fundamentally unfair and violated Fifth, Sixth, Eighth and Fourteenth Amendment guarantees.

III. The trial court's failure to consider relevant mitigating circumstances violated, inter alia, Mr. Kennedy's right to a reliable sentencing procedure under Alabama statutory law as well as his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

IV. The admission and consideration of nonstatutory aggravating factors during penalty phase violated Mr. Kennedy's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

V. Mr. Kennedy was deprived of the benefit of Alabama capital law requiring a finding of intent to kill and thereby deprived of due process and equal protection and other rights as secured by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

VI. Mr. Kennedy was denied effective assistance of counsel on direct appeal in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

VII. Mr. Kennedy's rights to a fair trial by an impartial jury were violated by the trial court's restrictions on the voir dire examinations of prospective jurors in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

VIII. The trial court's failure to grant Mr. Kennedy a change of venue violated his rights to a fair trial, an impartial jury, a sentencing hearing free from bias and prejudice and other rights in contravention of the Fifth, Sixth, Eighth and Fourteenth Amendments.

IX. Evidence of rape and the use of murder in the course of a rape as an aggravating factor deprived Mr. Kennedy of his rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

X. The court's instruction to the penalty phase jury

concerning intoxication was violative of Mr. Kennedy's rights pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

XI. The prosecution's failure to disclose the existence of Mr. Kennedy's confession to his probation officer violated Mr. Kennedy's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

XII. The court's ex parte knowledge of Mr. Kennedy's confession to his probation officer undercut defendant's Fifth, Sixth, Eighth and Fourteenth Amendment rights in both the guilt and sentencing phases.

XIII. The State's withholding of the alleged co-perpetrator's statements and other evidence was violative of Mr. Kennedy's rights pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments.

XIV. The admission of Mr. Kennedy's statements to the police and to probation violated Mr. Kennedy's rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

XV. The consideration of evidence concerning the homicide victim and her family subverted the rights of Mr. Kennedy in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

XVI. The trial court's failure to adequately instruct the jury on lesser included offenses violated Mr. Kennedy's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

XVII. Belittlement of the jury's role in the capital trial fatally eroded Mr. Kennedy's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

XVIII. The trial court acted improperly and committed reversible error by admitting an incomplete and misleading version of Victor Kennedy's statement into evidence, violating his rights secured by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

XIX. The admission of testimony from the forensic serologist as to sperm quantity and the speculative conclusions drawn therefrom violated the rights of Mr. Kennedy pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

XX. The use of heinous, atrocious and cruel as an aggravating factor violated Mr. Kennedy's rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution.

XXI. The death sentence imposed against Mr. Kennedy is racially biased in violation of Fifth, Sixth, Eighth, and Fourteenth Amendment requirements.

(R.1-4.)