Darren E. BOERCKEL, Petitioner–
Appellant,

v.

William D. O'SULLIVAN,
Respondent–Appellee.

No. 96–4068.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1997.

Decided Feb. 9, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied March 20, 1998.

David B. Mote (argued), Richard H. Parsons, Office of the Federal Public Defender, Springfield, IL, for Petitioner–Appellant.

Catherine Glenn (argued), Office of the Attorney General, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This is a case about comity. Boerckel raises claims in his petition for habeas corpus that he raised in his direct appeal to the Appellate Court of Illinois but that he did not include in his petition for leave to appeal to the Illinois Supreme Court. The district court dismissed these claims as procedurally barred. Between the district court's order and oral argument, this Court revised its approach to this issue in *Hogan v. McBride*, 74 F.3d 144 (7th Cir.), *modified on reh'g denied*, 79 F.3d 578 (7th Cir.1996), and *Gomez v. Acevedo*, 106 F.3d 192 (7th Cir.), *vacated on other grounds*, — U.S. —, 118 S.Ct. 37, 139 L.Ed.2d 6 (1997). After considering this subsequent change in our view, we reverse and remand.

## I. HISTORY

In 1976, law enforcement authorities in Montgomery County, Illinois questioned several young men about an incident of rape, burglary, and aggravated battery involving an 87–year–old woman. One of those young men was the petitioner, Darren Boerckel. At the time, Boerckel was a 17–year–old boy with an IQ of approximately 70 and a long-standing reading defect. *See People v. Boerckel*, 68 Ill.App.3d 103, 24 Ill.Dec. 674, 677, 385 N.E.2d 815, 821, 824 (1979).

After Boerckel received his *Miranda* warnings, the police questioned him for two hours. Promising to take him to see his girlfriend when they were finished, the police obtained a signed confession. One of the officers wrote the confession using the same or similar words to those of Boerckel because Boerckel indicated that he did not write very well. *See id.*, 24 Ill.Dec. at 678, 385 N.E.2d at 819. Boerckel was subsequently charged with rape, burglary, and aggravated battery. *See id.* at 676, 385 N.E.2d at 817.

Before trial, Boerckel's attorney unsuccessfully attempted to suppress the confession. At trial, prosecutors presented the confession and the fact that Boerckel has the same blood type as the rapist as evidence. A jury convicted Boerckel on all three charges. *See id.* at 677, 385 N.Ed.2d at 818.

Boerckel appealed his conviction to the Appellate Court of Illinois. He argued that the trial court erred in denying his motion to suppress because the confession was fruit of an illegal arrest, he did not receive his *Miranda* warnings properly, and he confessed involuntarily. Boerckel also claimed that the court erred in admitting certain evidence, denying his motion for discovery, denying his motion for a directed verdict since there was insufficient evidence to sustain a conviction, and denying his motion for mistrial because of prosecutorial misconduct. That court affirmed the conviction in a split decision. *See id.* at 683, 385 N.E.2d at 824.

Boerckel then filed a petition for leave to appeal to the Illinois Supreme Court, raising only three issues. He questioned whether he was under arrest before he gave incriminating statements, whether prosecutorial misconduct denied him a fair trial, and whether he was improperly denied discovery. The petition was denied. The United States Supreme Court also denied his petition for *certiorari*. *See Boerckel v. Illinois*, 447 U.S. 911, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).

On September 26, 1994, Boerckel filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Central District of Illinois. The court appointed counsel on January 31, 1995, and an amended petition was filed on March 15, 1995. The amended petition raised the following issues: 1) whether Boerckel knowingly and intelligently waived his *Miranda* rights; 2) whether his confession was involuntary; 3) whether the evidence against him was insufficient to support a guilty verdict; 4) whether his confession was the fruit of an illegal arrest; 5) whether he received ineffective assistance of both trial and appellate counsel; and 6) whether the prosecution violated his right of discovery under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The district court entered an order on November 15, 1995 dismissing the fourth ground of the petition on the merits as barred by *Stone v. Powell*, 428 U.S. 465, 96

S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The court also held that Boerckel procedurally defaulted on the fifth ground since it was never raised on direct appeal to any state court but that the sixth ground was properly presented and should be addressed on the merits. Finally, the court determined that Boerckel had procedurally defaulted on the first, second, and third grounds under *Nutall v. Greer*, 764 F.2d 462 (7th Cir.1985), because these grounds were not included in the petition for leave to appeal to the Illinois Supreme Court. These grounds were procedurally barred because the time period in which Boerckel could have raised them to the Illinois Supreme Court had passed.

After these initial rulings, the court requested additional briefing. Specifically, the district court asked Boerckel to address the issue of cause for or prejudice from his procedural defaults on the first, second, third, and fifth grounds. The court also directed the State to respond to the merits of Boerckel's petition, which it had not done in its initial response. Boerckel did not articulate any cause for his procedural defaults. Instead, he argued that the court may hear his claims under the actual innocence or fundamental miscarriage of justice exception to the rule of procedural default.

On July 24, 1996, the court set the matter for hearing. At the hearing, Boerckel presented witnesses who testified that, in the years since his conviction, two men have made statements that they committed the rape for which Boerckel was convicted.

On October 28, 1996, the district court found that the recent amendments to 28 U.S.C. § 2254 prohibited an evidentiary hearing[1] and that the court must ignore the evidence presented at the trial. The court added, however, that even if it believed the witnesses, it would only establish that others were present, not that Boerckel was not present. The district court further found that Boerckel had procedurally defaulted on his first, second, third, and fifth grounds for

habeas corpus relief and that he failed to show cause for the default.

Boerckel appealed to this Court.

## II. ANALYSIS

■ The sole issue in this appeal is whether, by failing to raise claims in his petition for leave to appeal to the Illinois Supreme Court, Boerckel procedurally defaulted on his claims that 1) he did not knowingly and intelligently waive his *Miranda* rights, 2) his confession was involuntary, and 3) the evidence against him was insufficient to support a guilty verdict.

### A.

■ Before a federal court may address the merits of a § 2254 habeas petition, a petitioner must provide the state courts with a full and fair opportunity to review his claims. *See Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991). In particular, a petitioner must exhaust his state remedies, *see* 28 U.S.C. § 2254(b), (c), and avoid procedurally defaulting his claims during the state court proceedings, *see United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir.1990). The doctrines of exhaustion and procedural default both "involve situations in which a failure to present a claim in the state courts bars the granting of federal habeas corpus relief in the federal courts." *See* James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 23.1 n.9 (1988 & supp.1993). The doctrines, however, are distinct and have different ramifications.

### 1.

The exhaustion doctrine is an ordering device. In *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), the Supreme Court held that federal courts should not, for reasons of comity and deference to state

---

**1.** When the district court made this determination, it relied on this Court's interpretation of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214, in *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996) (holding that courts may apply the statute retroactively). The Supreme Court has subsequently reversed our interpretation of this issue. *See Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). On remand, the district court should apply § 2254 as it existed before these amendments.

courts, entertain a claim in a habeas corpus petition until after the state courts have had an opportunity to hear the matter. *See id.* at 252–53, 6 S.Ct. at 741. Subsequently incorporated into the habeas statute, the doctrine states that individuals in state government custody may bring a habeas corpus petition only if they have exhausted the remedies available in state court or "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights" of that individual. 28 U.S.C. § 2254(b). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

■ Read narrowly, this language appears to prevent federal courts from concluding that a petitioner has exhausted his remedies if there exists any possibility of further state court review. The Supreme Court has expressly rejected this interpretation. *See Brown v. Allen,* 344 U.S. 443, 447, 448–49 n. 3, 73 S.Ct. 397, 403 n. 3, 97 L.Ed. 469 (1953) (holding that the exhaustion doctrine does not require habeas petitioners to seek state collateral relief based upon the same evidence and issues once the state courts have already ruled on the claim on direct review). Instead, federal court review is delayed until the state has had a chance to correct any errors in its law or procedures. *See, e.g., Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408–09, 30 L.Ed.2d 418 (1971) (per curiam) (stressing that exhaustion requirement allows state courts an "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights") (quoting *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)).

■ Thus, the exhaustion doctrine allows the state court system to decide the merits of the claim first. An exhaustion question is only one of timing, not jurisdiction. It determines not whether but when a federal court will consider a habeas corpus petition. *See Fay,* 372 U.S. at 418, 83 S.Ct. at 838 ("This qualification plainly stemmed from considerations of comity rather than power, and envisaged only the postponement, not the relinquishment, of federal habeas corpus

jurisdiction."); *see also* Matthew L. Anderson, Note, *Requiring Unwanted Habeas Corpus Petitions to State Supreme Courts for Exhaustion Purposes: Too Exhausting,* 79 Minn. L.Rev. 1197, 1201–02 (1995).

### 2.

The failure to use available state procedures, however, likely will prevent federal habeas corpus relief, not because of exhaustion problems, but rather because the petitioner will have forfeited his claim by violating a state procedural rule. *See* Liebman & Hertz, *supra,* § 23.1 n. 9.

■ The doctrine of procedural default bars federal habeas review when a state court declines to address a prisoner's federal claims because the defendant has not met a state procedural requirement. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991); *see also Ulster County Court v. Allen,* 442 U.S. 140, 148, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). If a default occurs, federal relief is foreclosed because the default constitutes an independent and adequate state ground on which the decision rests. *See* Liebman & Hertz, *supra,* § 23.1 n. 9.

■ On both direct review and habeas review, the Supreme Court has held that it will not consider an issue of federal law from a judgment of a state court if that judgment rests on a state law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision. *See Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989); *see also Fox Film Corp. v. Muller,* 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935); *Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 635–36, 22 L.Ed. 429 (1874). Without the independent and adequate state ground doctrine, habeas petitioners would be able to avoid the exhaustion requirement by failing to satisfy a state's procedural rules, rendering the defaulted state remedies unavailable. *See Coleman,* 501 U.S. at 732, 111 S.Ct. at 2555. Thus, "[t]he independent and adequate state

ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases," *id.*, by requiring petitioners to satisfy a state's procedural rules and exhaust their state remedies or face the penalty of having their claims barred from federal habeas review.

### B.

When the district court heard Boerckel's petition, this Court believed that a federal habeas petitioner forfeited the right to habeas relief if he did not seek review in a state's highest court of all the claims presented in his habeas petition. *See Nutall v. Greer,* 764 F.2d 462, 463–64 (7th Cir.1985); *see also Lostutter v. Peters,* 50 F.3d 392 (7th Cir. 1995); *Jones v. Washington,* 15 F.3d 671, 675 (7th Cir.1994); *Mason v. Gramley,* 9 F.3d 1345 (7th Cir.1993). Then, in 1996, this Court revised its approach to the doctrine of procedural default.

#### 1.

In *Hogan v. McBride,* this Court reconsidered whether a federal habeas petitioner forfeits a claim that is not included in a discretionary petition for transfer to the state's highest court. *See* 74 F.3d at 144. In *Hogan,* the petitioner did not include a confrontation claim in his discretionary appeal to Indiana's highest court, and the district court deemed this claim forfeited as a procedural default under *Wainwright,* 433 U.S. at 72, 97 S.Ct. at 2498–99. *See Hogan,* 74 F.3d at 145.

The Court evaluated whether Indiana law encourages petitioners to be selective in the presentation of their claims to the Indiana Supreme Court, recognizing that "[f]orfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan,* 74 F.3d at 146 (citing *Coleman,* 501 U.S. at 729–44, 111 S.Ct. at 2553–62; Harris, 489 U.S. at 267, 109 S.Ct. at 1046). After reviewing Indiana's appellate rules, it concluded that Indiana "discourages litigants from raising every possible claim of error, which implies that omission is not to be penalized." *Hogan,* 74 F.3d at 146. Thus, the Court concluded that "[t]he claim was not forfeited; it was resolved on the merits; and when the

last state court to address a question reaches the merits without invoking a rule of forfeiture, the question is open on collateral review under § 2254." *Id.* (citing *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Coleman,* 501 U.S. at 732–35, 111 S.Ct. at 2555–57).

The Court also explained why *Nutall* and its progeny were erroneous. "*Nutall* was decided before the Supreme Court refined the forfeiture doctrine in *Harris, Coleman,* and *Ylst.* These opinions establish that § 2254 asks whether an independent and adequate state ground supports the decision. Forfeiture depends on state law.... " *Hogan,* 74 F.3d at 147. Thus, "[i]f the prisoner has presented his argument to the right courts at the right times—as the states define these courts and times—then the claim is preserved for federal collateral review." *Id.*

#### 2.

In *Gomez v. Acevedo,* the Court applied its *Hogan* analysis to determine whether Gomez defaulted on a claim by not including it in his petition to the Illinois Supreme Court. *See* 106 F.3d at 196. After reviewing Illinois case law, the Court determined that a petition for leave to appeal " 'is not necessarily an adversary proceeding to which the application of ... the doctrine of waiver ... is appropriate.' " *Id.* (quoting *People v. Edgeworth,* 30 Ill.App.3d 289, 332 N.E.2d 716, 720 (1975)). Also, the Court noted that a denial of leave to appeal " 'carr[ies] no connotation of approval or disapproval of the appellate court action.' " *Gomez,* 106 F.3d at 196 (quoting *People v. Vance,* 76 Ill.2d 171, 28 Ill.Dec. 508, 513, 390 N.E.2d 867, 872 (1979)). Thus, it concluded that Gomez did not procedurally default by failing to present a claim to the Illinois Supreme Court. *See* 106 F.3d at 196.

### C.

O'Sullivan argues that this Court's analysis in *Hogan* and holding in *Gomez* are erroneous and that we should return to our previous view of procedural default and dismiss Boerckel's claims as defaulted. He claims that an exception exists to the general rule

that " 'a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.' " *Coleman,* 501 U.S. at 735–36, 111 S.Ct. at 2557 (quoting *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043). Specifically, O'Sullivan highlights a footnote in *Coleman* which states that this clear statement rule "does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1. In such a scenario, the Supreme Court reasoned that a procedural default exists "for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Id.*

O'Sullivan believes that the exception to the rule announced in *Coleman* is precisely the situation in this case. Boerckel did not raise three claims to the Supreme Court of Illinois that he raises in his habeas petition, and the time for filing a petition to that court has long passed. *See* Ill. S.Ct. R. 315(b). Thus, he contends that Boerckel procedurally defaulted by not presenting these claims to the Illinois Supreme Court.

### 1.

In *Hogan* and *Gomez,* this Court evaluated the state law of forfeiture to determine whether Indiana and Illinois penalized litigants for not including claims in petitions to the Indiana and Illinois Supreme Court. *See* 74 F.3d at 146, 106 F.3d at 196. By raising the question of whether Boerckel has exhausted his state remedies as a preliminary inquiry in determining whether Boerckel has procedurally defaulted, O'Sullivan has shifted

the focus of our analysis. The critical issue in responding to O'Sullivan's argument is not whether the state court relied on a procedural rule to conclude that the petitioner procedurally defaulted on the claim. Rather, it is whether the petitioner's refusal to include all his claims in his petition for leave to appeal to the Illinois Supreme Court constitutes a failure to exhaust his state court remedies, which thereby bars him from raising them in his habeas petition under the doctrine of procedural default.

As we noted earlier, a petitioner exhausts his remedies when he provides the state courts with a full and fair opportunity to review his claims. *See Keeney v. Tamayo–Reyes,* 504 U.S. 1, 10, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992); *Picard,* 404 U.S. at 276, 92 S.Ct. at 513. Even though O'Sullivan's argument alters our analysis, the result remains the same. We hold that the exhaustion requirement of § 2254 does not require a petitioner to include all of his claims in a petition for leave to appeal to the Illinois Supreme Court to exhaust his state remedies.[2]

### 2.

The key to solving the puzzle of how many chances a petitioner must give the state courts to review his claims lies in the language of § 2254. Section (c) provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has *the right* under the law of the State *to raise,* by any available procedure, *the question presented.*" 28 U.S.C. § 2254(c) (emphasis added). Codified in 1948, this section incorporated the common law on exhaustion. *See Rose,* 455 U.S. at 515, 102 S.Ct. at 1201–02; *see also Ex parte Hawk,* 321 U.S. 114, 116–17, 64 S.Ct. 448, 449–50, 88 L.Ed. 572 (1944). The ques-

---

2. Although we refuse O'Sullivan's invitation to stray from our established position, we note that other circuits are split on this issue. *Compare Jennison v. Goldsmith,* 940 F.2d 1308, 1310 (9th Cir.1991) (per curiam) (Petitioner must seek discretionary review in Arizona state courts; "the right to raise" an issue does not entail a right to have that issue considered on its merits.); *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) (Petitioner must present claim to highest court of the state before a federal court may consider its merits.);

and *Richardson v. Procunier,* 762 F.2d 429, 431–32 (5th Cir.1985) (Petitioner must seek discretionary review in the Texas Court of Criminal Appeals.) *with Dolny v. Erickson,* 32 F.3d 381 (8th Cir.1994) (Petitioner need not request discretionary review in Minnesota Supreme Court.); and *Buck v. Green,* 743 F.2d 1567, 1569 (11th Cir.1984) (For purposes of § 2254, Georgia defendant who lost appeal as a matter of right, need not petition the Georgia Supreme Court for *certiorari,* given that court's limited jurisdiction.).

tion, however, has always remained: " '*To what extent* must the petitioner who seeks federal habeas exhaust state remedies before resorting to the federal court?' " *Castille v. Peoples*, 489 U.S. 346, 349–50, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) (Scalia, J., for unanimous Court) (quoting *Wainwright*, 433 U.S. at 78, 97 S.Ct. at 2502) (emphasis added in *Castille*). We interpret the right to raise the question presented to mean more than simply the ability to present a question to a court and request an opportunity to be heard. *See Dolny*, 32 F.3d at 384 (stressing that " '[t]he right . . . to raise' an issue referred to in § 2254 means more than a mere opportunity to seek leave to present an issue; it means a realistic, practical chance to present an issue and have it considered on the merits"); Liebman & Hertz, *supra*, § 23.4. We believe an applicant has exhausted the remedies available if he takes advantage of whatever appeals the state system affords as of right.

### 3.

In Illinois, the right of a petitioner to have his claim considered by the Illinois Supreme Court is restricted. It is within the sound judicial discretion of the Illinois Supreme Court to decide whether to review the bulk of the decisions of the Appellate Court of Illinois. *See* Ill. S.Ct. R. 315(a); *see also Bowman v. Illinois Cent. Ry. Co.*, 11 Ill.2d 186, 142 N.E.2d 104 (1957). In determining whether to grant a petition for leave to appeal, the court evaluates criteria which include "the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed." Ill. S.Ct. R. 315(a); *cf. Hogan*, 74 F.3d at 146 (determining that Indiana's appellate rules are similarly constructed); *Dolny*, 32 F.3d at 384 (similar in Minnesota); *Buck*, 743 F.2d at 1569 (similar in Florida). The fact that Illinois discourages litigants from raising every possible claim of error is evidence that Illinois does not consider it necessary that petitioners raise all of their claims to exhaust their remedies.

Moreover, Illinois recognizes that its Supreme Court's practice is similar to the *certiorari* procedure in the United States Supreme Court. *See* Ill. S.Ct. R. 315 Comm. Cmts. The denial of a leave to appeal is not a decision on the merits of a case just like the " 'denial of a writ of *certiorari* imports no expression of opinion upon the merits of the case.' " *Teague v. Lane*, 489 U.S. 288, 296, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989) (plurality) (quoting *United States v. Carver*, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923) (Holmes, J.)); *see also People v. Vance*, 76 Ill.2d 171, 28 Ill.Dec. 508, 513, 390 N.E.2d 867, 872 (1979). In *Fay v. Noia*, the Supreme Court recognized that a petitioner's failure to timely seek *certiorari* in the Supreme Court does not bar a state prisoner from federal habeas relief. *See* 372 U.S. 391, 435, 83 S.Ct. 822, 847, 9 L.Ed.2d 837 (1963), *overruled on other grounds by Coleman*, 501 U.S. at 748–51, 111 S.Ct. at 2564–66. To remain consistent with *certiorari* practice, Boerckel's decision not to include all of his claims does not bar him from federal habeas relief.

### 4.

Also, we can infer that a petitioner provides state courts with a fair presentation of his claim in his appeal as of right, not in a petition for leave to appeal. *See Wilwording*, 404 U.S. at 250, 92 S.Ct. at 408–09.

In *Castille*, the Supreme Court held that a prisoner who raised an issue for the first time on a petition to the Pennsylvania Supreme Court for allocatur did not provide the state courts with "fair presentation" of the claim for purposes of the exhaustion requirement. *See* 489 U.S. at 351, 109 S.Ct. at 1060. Under Pennsylvania law, allocatur review is not a matter of right, but of sound judicial discretion, and an appeal is allowed only when there are special and important reasons. *See* Pa. R.App. Proc. 1114. The court concluded that raising a claim in a procedural context in which discretion exists to refuse to consider the merits does not constitute "fair presentation." *See Castille*, 489 U.S. at 351, 109 S.Ct. at 1060; *see also* Cruz, 907 F.2d at 669 (holding that a petitioner did not exhaust

his state remedies by merely submitting a claim to the Illinois Supreme Court).

Then, in *Ylst,* the Supreme Court considered whether a state prisoner procedurally defaulted his habeas claims when an unexplained denial for state habeas corpus followed a rejection of the same claim by the state's appellate court on direct appeal. *See* 501 U.S. at 799, 111 S.Ct. at 2592. In concluding that the prisoner procedurally defaulted, the court reasoned that the prisoner "had exhausted his . . . claim by presenting it on direct appeal, and was not required to go to state habeas at all." *Id.* at 805, 111 S.Ct. at 2595–96.

Thus, if Boerckel must provide state courts with an opportunity to correct any alleged violation of his federal rights and a petition for leave to appeal does not constitute this opportunity, *see Castille,* 489 U.S. at 351, 109 S.Ct. at 1060, and Boerckel is not required to seek state habeas proceedings, *see Ylst,* 501 U.S. at 805, 111 S.Ct. at 2595–96, then a petitioner provides the state courts with the required opportunity in the petitioner's direct appeal as of right.

### 5.

■ Our holding is also consistent with the principles underlying the exhaustion requirement. Comity is the primary basis for the exhaustion requirement. *See Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982); *Hawk,* 321 U.S. at 117, 64 S.Ct. at 450.

Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose,* 455 U.S. at 518, 102 S.Ct. at 1203 (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)); *see also Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) *(per curiam)* (noting that the exhaustion require-ment "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights").

Boerckel provided Illinois state courts with an opportunity to review the matter in his direct appeal. Federal courts do not snatch claims from state courts when they review claims not included in discretionary petitions to state supreme courts. Our refusal to bar Boerckel from habeas review is a recognition of the inequity of penalizing a petitioner for following the requirements a state imposes on its second tier of appellate review. Allowing petitioners to exercise the discretion provided them by the states in selecting claims to petition for leave to appeal does not offend comity.

We also note that requiring petitioners to argue all of their claims to the state supreme court would turn federalism on its head. If a state has chosen a system that asks petitioners to be selective in deciding which claims to raise in a petition for leave to appeal to the state's highest court, we seriously question why this Court should require the petitioner to raise all claims to the state's highest court if he hopes to request habeas review. The exhaustion requirement of § 2254 does not require such a result.

Moreover, contrary to O'Sullivan's suggestion, this decision will not "obliterate any opportunity for a state's highest court to protect federally secured rights because it will leave state prisoners with little incentive to petition state supreme courts." Respondent Br. at 19. It is difficult to imagine that this holding will induce attorneys and defendants in state government custody to withhold an appropriate claim in a petition for leave to appeal to the state's highest court, knowing that it cannot hurt and could only potentially help their cause. O'Sullivan's argument assumes a remarkably risk-prone group of defendants and attorneys, especially given the fact that "the success rate at trial and on appeal, while low, is greater than the success rate on habeas corpus." *See* Judith Resnik, *Tiers,* 57 S. Cal. L.Rev. 837, 894 (1984). We do not believe that it accurately predicts the effect our holding will have on

the incentives to petition the Illinois Supreme Court.

Finally, we reiterate our concern that "[t]reating an omission from a petition for a discretionary hearing as a conclusive bar to federal review under § 2254 could create a trap for unrepresented prisoners, whose efforts to identify unsettled and important issues suitable for discretionary review would preclude review of errors under law already established." *Hogan,* 74 F.3d at 147.

We therefore hold that Boerckel exhausted his state remedies by including these claims in his direct appeal to the Appellate Court of Illinois. The exhaustion principle of § 2254 does not require him to include all of his claims in a petition for leave to appeal to the Illinois Supreme Court. Thus, we do not need to reach the question of whether the Illinois Supreme Court would find these claims procedurally barred because of its timing requirement. For these reasons, we REVERSE the district court's dismissal of Boerckel's habeas petition and REMAND for further proceedings consistent with this decision.