[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-12314

_____

D. C. Docket No. 99-01519 CV-AR-S

JOHNNY HOWARD SMITH,

Petitioner-Appellant,

versus

RON JONES, Dr., Warden,
ATTORNEY GENERAL OF THE
STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 10, 2001)**

Before CARNES and MARCUS, Circuit Judges, and PROPST[*], District Judge.

CARNES, Circuit Judge:

_____

[*]Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama,
sitting by designation.

This appeal from the denial of 28 U.S.C. § 2254 relief brings us procedural bar issues of first impression relating to O'Sullivan v. Boerckel, 526 U.S. 838, 119 S. Ct. 1728 (1999), and its application to Alabama prisoners whose direct appeal process was completed before that decision was released.

In Smith v. White, 719 F.2d 390 (11th Cir. 1983), we held that a defendant whose conviction was affirmed by the Alabama Court of Criminal Appeals did not need to file a petition for discretionary certiorari review in the Alabama Supreme Court in order to exhaust state remedies and avoid an appellate default procedural bar. We had already reached a similar holding about discretionary review in the Florida Supreme Court, Williams v. Wainwright, 452 F.2d 775 (5th Cir. 1971), and a year after Smith we came to the same conclusion about discretionary review in the Georgia Supreme Court, Buck v. Green, 743 F.2d 1567, 1569 (11th Cir. 1984). In this § 2254 case involving an Alabama prisoner, we must now decide if Boerckel applies to habeas cases in which the direct appeal was completed before the rule of that case was announced; whether Boerckel overruled our Smith decision; and, if so, whether reliance upon our Smith decision is adequate cause to excuse a prisoner's failure to comply with the Boerckel rule. We answer those questions "yes," "yes," and "no."

2

Johnny Howard Smith is an Alabama prisoner serving concurrent life and life without parole sentences imposed after he was convicted by a jury of first degree robbery, attempted murder, and conspiracy to commit robbery. He appealed to the Alabama Court of Criminal Appeals, raising four issues, but that court affirmed his convictions without opinion on October 31, 1997. Smith v. State, 727 So.2d 177 (Ala. Crim. App. 1997).[1] Under Alabama Rule of Appellate Procedure 39(b), Smith had fourteen days to file a petition for certiorari review in the Alabama Supreme Court. Although the scope of discretionary review under that rule is broad, see infra note 6, Smith's attorney did not file a certiorari petition on his behalf in the Alabama Supreme Court. Under the law of this circuit at that time, it was not necessary to do so in order to preserve a prisoner's full federal habeas review options.[2]

---

[1]The four issues Smith raised on direct appeal were:

> (a) that the trial court erred in allowing a co-conspirator to testify because the State had not proved the existence of a conspiracy;
>
> (b) that the State did not corroborate the accomplices' testimony;
>
> (c) that the trial court erred in allowing a witness to testify to what her thoughts were without having a basis of knowledge as to the underlying facts; and
>
> (d) that the trial court erred in failing to change venue because of extensive pretrial publicity.

[2]After his direct appeal was over, Smith filed a pro se petition for collateral review in the state trial court, the denial of which was affirmed without opinion by the Alabama Court of Criminal Appeals on October 28, 1998. Smith tried to get the Alabama Supreme Court to review

On June 7, 1999, which was over a year and a half after the time had run for Smith to file his direct appeal certiorari petition in the Alabama Supreme Court, the United States Supreme Court issued its Boerckel decision. Resolving a circuit split, see Boerckel, 526 U.S. at 842, 119 S. Ct. at 1731, against the law of this circuit, Boerckel held that in order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state, id. at 845 - 47, 119 S. Ct. at 1732 - 34. That requirement is true even if, as is often the case, the state supreme court rarely grants such petitions and usually confines itself to answering questions of broad significance. The requirement for exhaustion of discretionary direct review steps exists where state rules give a petitioner the "right ... to raise" the federal claims in that manner and the federal court cannot conclude that review of them is "unavailable." Id. at 845 - 46, 119 S. Ct. at 1733.

---

that denial, but his petition for certiorari was stricken by that Court on May 14, 1999, for some noncompliance with Appellate Rule 39. We mention those collateral review events only in a footnote, because they have no direct bearing on the issues we address in this opinion, which relate to direct review. Given our decision on the issues we do address, we have no need to decide in this case the issue the Seventh Circuit decided in White v. Godinez, 192 F.3d 607 (7th Cir. 1999), which is whether the Boerckel rule applies to a habeas petitioner's failure to raise an issue in a discretionary review petition in the state's highest court during the collateral review process.

4

The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. Id. at 848 - 49, 119 S. Ct. at 1734; see also Coleman v. Thompson, 501 U.S. 722, 750 - 51, 111 S. Ct. 2546, 2565 (1991). That is what happened to Boerckel. He actually did file a state discretionary review petition, but he left out of it three of the federal constitutional issues that he later included in his federal habeas petition. Boerckel, 526 U.S. at 840 - 42, 119 S. Ct. at 1730 - 31. By the time Boerckel got to federal habeas, it was too late for him to go back and include those three issues in the long-since denied petition for discretionary review he had filed with the state supreme court. What Boerckel's failure to take full advantage of his state discretionary review remedies meant, the Supreme Court held, is that he had failed to exhaust his state remedies as to those three federal constitutional issues, and his failure to exhaust had matured into a procedural default as soon as the once available remedy was closed. Id. at 848, 119 S. Ct. at 1734.

Because Boerckel had failed to establish either cause for and prejudice from his procedural default, or that a fundamental miscarriage of justice would result

from not considering the forfeited claims, id. at 841 - 842, 119 S. Ct. at 1731, the district court held that he was not entitled to federal habeas review of those claims. Id. The Supreme Court agreed and reversed the Seventh Circuit's reversal of the district court's decision. Id. at 849, 119 S. Ct. at 1734. The end result was that the federal claims Boerckel had not included in his application to the state supreme court for discretionary review were barred from federal habeas review. See Boerckel v. O'Sullivan, 234 F.3d 1272 (7th Cir. 2000) (unpublished) (on remand from the Supreme Court) ("Because of Boerckel's procedural defaults we now AFFIRM the district court's denial of habeas corpus relief.").

Where does that leave our Alabama petitioner, Johnny Howard Smith, who failed to file a certiorari petition in the Alabama Supreme Court during his direct appeal? He filed his federal habeas petition, pro se, on June 11, 1999, which was four days after the Supreme Court handed down the Boerckel decision. The State responded by asserting, among other defenses, that some of Smith's claims were procedurally barred under the Boerckel decision because of his failure to file a certiorari petition in the Alabama Supreme Court during the direct appeal process. The district court agreed, holding that three of Smith's claims were procedurally defaulted for that reason even though he had presented them to the Alabama Court

6

of Criminal Appeals which had rejected them.[3]  In the district court, Smith argued that the Boerckel decision ought not be applied to his case, because it was unforeseeable, and in later filings he also said that he had relied upon this Court's Smith v. White holding that it was unnecessary to file a certiorari petition in the Alabama Supreme Court in order to exhaust state remedies and avoid a procedural default.  The district court rejected Smith's argument that Boerckel was inapplicable, and finding no cause and prejudice, and no fundamental miscarriage of justice, the district court applied the procedural bar and denied Smith's habeas petition without considering the merits of the three claims that Smith could have

---

[3]The three claims the district court held were procedurally barred were:

>    (a) that the petitioner was deprived of his right to a fair trial by the denial of his motion to change venue;
>
>    (b) that the petitioner was deprived of his right to a fair trial because the State failed to adequately corroborate the testimony of an accomplice; and
>
>    (c) that the petitioner was deprived of his right to a fair trial because a witness was allowed to testify about her thoughts, absent a basis of knowledge as to the underlying facts.

The two claims the district court ruled were not procedurally barred because of Smith's failure to file a certiorari petition in the Alabama Supreme Court on direct appeal were the ineffective assistance of trial and appellate counsel claims.  There was no direct appeal procedural bar as to those two claims because, as a practical matter, they could not have been raised and decided on direct appeal.  The district court denied the two ineffective assistance claims on the merits, and no certificate of appealability was granted as to that part of the court's decision.

but did not raise in a direct appeal certiorari petition to the Alabama Supreme Court.

Picking up in this Court where his client left off in the district court, counsel we appointed to represent Smith in this appeal has tried to convince us that the non-retroactivity doctrine announced in Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), bars application of the Boerckel rule to any cases which had completed the direct appeal process at the time the rule was announced. But that is not what the Teague doctrine is about. As the Supreme Court has explained, "Teague stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review," a proposition that is based upon respect for the strong interest of states in the finality of criminal convictions, and the nature of the Teague rule is such that it is not applicable for the benefit of habeas petitioners. Lockhart v. Fretwell, 506 U.S. 364, 372 - 73, 113 S. Ct. 838, 844 (1993); see also Teague, 489 U.S. at 310, 109 S. Ct. at 1075 ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). Neither the purpose nor the terms of the Teague rule have any application to new rules of federal habeas procedure,

such as the Boerckel rule on what is required for exhaustion of state direct appeal remedies.

Any contrary holding about the applicability of the Boerckel decision would be inconsistent with the result in that decision itself. Boerckel's failure to raise all his federal issues in his state court petition for discretionary review occurred in 1979 or 1980.[4] The Supreme Court's decision announcing the rule under which Boerckel's conduct constituted a failure to exhaust amounting to a procedural default did not come until twenty years after his conduct, yet the Supreme Court applied the new rule to Boerckel. The Boerckel rule must be applied with equal force to any other habeas petitioner, regardless of when the failure to seek state discretionary review occurred.

Any other result would be inconsistent with the Boerckel decision itself, and with the general doctrine that when the Supreme Court announces a rule of federal law and applies it to the parties in that case, the rule is to be given full retroactive effect and applied to all pending cases and "to all events, regardless of whether such events predate or postdate" the announcement of the rule, Harper v. Virginia

---

[4]Boerckel's conviction was affirmed by Illinois' intermediate appellate court on January 10, 1979, see People v. Boerckel, 68 Ill.App.3d 103, 385 N.E.2d 815 (1979), and the United States Supreme Court denied certiorari on June 9, 1980, see Boerckel v. Illinois, 447 U.S. 911, 100 S. Ct. 2998 (1980). His petition for leave to appeal to the Illinois Supreme Court was filed sometime between those two dates.

Dep't of Taxation, 509 U.S. 86, 94 - 97, 113 S. Ct. 2510, 2516-18 (1993).  So, the Boerckel rule applies – if the state discretionary review procedures fit within the scope of the rule – to all federal habeas proceedings that had not been completed before that decision was announced.  It certainly applies to cases, such as Smith's, in which the § 2254 petition was filed after the Boerckel decision was released.

And there is no doubt that Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the Boerckel rule. The Alabama Supreme Court's certiorari review rule gives that court broad discretion over the issues it will review.  Among other grounds, certiorari review can be granted to decide issues of first impression; to decide whether an Alabama Supreme Court decision relied upon by the Court of Criminal Appeals ought to be overruled; and to determine whether the Court of Criminal Appeals' decision conflicted with prior decisions of the United States Supreme Court, the Alabama Supreme Court, or the Court of Criminal Appeals itself.[5]  Any federal law question

---

[5]Alabama Rule of Appellate Procedure 39(c), as in effect at the time of Smith's direct appeal, provided that:

In all other cases [except death penalty cases], civil or criminal, petitions for writs of certiorari will be considered only:
. . . .

(3) From decisions when a material question requiring decision is one of first impression in Alabama;

(4) From decisions in conflict with prior decisions of the United States Supreme

would fit within one or more of those grounds for certiorari review, and that is particularly true in light of the limitation on federal habeas review now contained in 28 U.S.C. § 2254(d). Because the scope of the Alabama Supreme Court's discretionary review on direct appeal is broader than that of the Illinois Supreme Court, which was the court whose review procedures were involved in the Boerckel case itself, see 526 U.S. at 845 - 48, 119 S. Ct. at 1732 - 34, Alabama convictions and prisoners clearly come within the scope of the Boerckel rule. Our decision in Smith has been effectively overruled. It follows that all three of the federal claims that Smith could have but did not raise in a certiorari petition to the Alabama Supreme Court on direct review have been procedurally defaulted.[6]

------

Court, the Alabama Supreme Court, or the Alabama courts of appeals; ... and,

(5) Where petitioner seeks to have controlling [Alabama] supreme court cases overruled which were followed in the decision of the court of appeals.

Ala. R. App. P. 39(c) (1990) (amended 2000). The rule has not been changed in any respect relevant to the Boerckel rule since Smith's direct appeal.

[6]This case involves an Alabama conviction and not one from Florida or Georgia. As we have explained, certiorari review in the Alabama Supreme Court is broad enough to bring convictions from that state within the scope of the Boerckel rule. We have no occasion in this case to decide whether the direct appeal discretionary review available in the Florida and Georgia Supreme Courts is broad enough to bring convictions from those states within the scope of the Boerckel rule, so that Williams v. Wainwright, 452 F.2d 775 (5th Cir. 1971) and Buck v. Green, 743 F.2d 1567 (11th Cir. 1984) have also been overruled. See generally Boerckel, 526 U.S. at 845 - 48, 119 S. Ct. at 1732 - 34 (describing the scope of the Illinois Supreme Court's discretionary review, which was held to be broad enough to require exhaustion). Those are issues that will have to be decided in cases involving prisoners from those two states.

11

But this case does not end there, because the bar arising from a procedural default can be lifted by a showing of adequate cause for and actual prejudice from the procedural default.  See Coleman, 501 U.S. at 750 - 51, 111 S. Ct. at 2565.  We turn now to the question of whether the existence of our Smith v. White precedent, at the time when the present Smith petitioner could have but did not file a petition for certiorari review in the Alabama Supreme Court, constitutes adequate cause for his failure to do so.  For purposes of this opinion we accept as true Smith's assertion that his failure to file a certiorari petition in the Alabama Supreme Court resulted from reliance upon our Smith decision.

The Boerckel decision itself does not address this precise cause issue.  The most that can be obtained from Boerckel relating to this issue is an implicit holding that the absence, at the time of the failure to seek discretionary state review, of any circuit precedent on whether that failure will result in a procedural default is not sufficient cause to excuse such failure.  As we mentioned earlier, Boerckel's failure to include all his federal issues in his application for state discretionary review occurred in 1979 or 1980.  At that time there was no Seventh Circuit decision telling Boerckel and his counsel whether he was required to file a discretionary review petition and include all of his federal issues in order to exhaust state remedies and avoid procedural default problems when he got to federal habeas.  As

12

late as 1985 the Seventh Circuit had said that the issue was still one of first impression in that circuit. See Nutall v. Greer, 764 F.2d 462, 463 (7th Cir. 1985).[7] So, the most that Boerckel stands for in this regard is that the lack of any circuit precedent telling prisoners to seek state discretionary review or else, is not cause to excuse their failure to do so. It appears that the Seventh Circuit may have interpreted Boerckel as meaning that, because on remand it affirmed without discussion of any cause issue the district court's holding that Boerckel's claims were procedurally barred. See Boerckel v. O'Sullivan, 234 F.3d 1272 (7th Cir. 2000) (unpublished) ("Because of Boerckel's procedural defaults we now AFFIRM the district court's denial of habeas corpus relief.").

---

[7]In Nutall itself the Seventh Circuit held that a petitioner was required to pursue discretionary state review in order to exhaust state remedies and avoid committing a procedural default, 764 F.2d at 464, but that direction came at least five years too late to provide any guidance to Boerckel.

By the time Boerckel's case was decided by the Seventh Circuit in 1998, that Court had changed its mind and held that discretionary state appellate review was not a remedy that had to be exhausted or from which a procedural default could arise. See Hogan v. McBride, 74 F.3d 144, 146-47 (7th Cir.), modified on reh'g denied, 79 F.3d 578 (7th Cir. 1996); Gomez v. Acevedo, 106 F.3d 192, 196 (7th Cir.), vacated on other grounds sub nom. Gomez v. DeTella, 522 U.S. 801, 118 S. Ct. 37 (1997). Of course, that switch could have had no impact on Boerckel's behavior at the time of his state direct appeal, more than a decade and a half earlier. All the change in circuit precedent did was give him a reprieve from the procedural bar, see Boerckel v. O'Sullivan, 135 F.3d 1194, 1198-99 (7th Cir. 1998) (holding that because of the change in circuit law since Nutall Boerckel had not been guilty of a procedural default), which ended when the Supreme Court disagreed with the Seventh Circuit's new position and held that Boerckel had procedurally defaulted the claims he had failed to include in his state petition for discretionary review. See Boerckel v. O'Sullivan, 234 F.3d 1272 (7th Cir. 2000) (unpublished) (affirming after remand from the Supreme Court the district court's denial of habeas corpus relief).

13

But this case is different, although whether that difference changes the result is another matter. Instead of there having been no circuit precedent either way, as in <u>Boerckel</u>, when Smith's case was on direct appeal the law of this circuit was clear that he did not need to file a certiorari petition in the Alabama Supreme Court in order to exhaust his state remedies and avoid procedural bar problems in federal habeas. We had held exactly that in <u>Smith v. White</u>, 719 F.2d 390, 392 (11th Cir. 1983) – which came fourteen years before this petitioner's state direct appeal – when we extended to Alabama prisoners a rule we had established for Florida prisoners twelve years before in <u>Williams v. Wainwright,</u> 452 F.2d 775 (5th Cir. 1971), and which we would extend to Georgia prisoners the next year in <u>Buck v. Green</u>, 743 F.2d 1567, 1569 (11th Cir. 1984). The difference between no circuit law on point and circuit law directly on point which turned out to be erroneous may distinguish this case from <u>Boerckel</u> itself insofar as the cause issue is concerned, but if it does that leaves unanswered the question of whether erroneous circuit law can serve as cause to excuse a failure to comply with a retrospectively applicable rule announced in a Supreme Court decision which overrules that circuit law.

One rough analogy that comes to mind involves the statute of limitations provisions enacted as part of the Anti-Terrorism and Effective Death Penalty Act

14

of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1) & 2255 (6th para.). The

legislation imposing a one-year limitations period for the filing of § 2254 and §

2255 petitions took effect on its enactment date of April 24, 1996. See Wilcox v.

Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998); Goodman v.

United States, 151 F.3d 1335, 1336 & n.1 (11th Cir. 1998). By their terms, the

statute of limitations provisions in the AEDPA bar any §§ 2254 or 2255 petition

filed more than a year after the conviction became final at the conclusion of direct

appeal, subject to certain exceptions and with some specified time out for state

collateral review in § 2254 cases. The exceptions, however, did not cover the

thousands of state and federal prisoners for whom the stated period had already run

before the limitations provisions were enacted.

Before the enactment of the AEDPA the law was settled everywhere that

there was no limitations period for filing §§ 2254 and 2255 petitions, although

laches principles might apply in extreme cases.[8] In reliance upon that state of the

law, many prisoners had not filed within the one-year period as the subsequently

---

[8]Our decisions indicate that laches rarely applies even where the delay in filing a petition has been extreme. See Bedford v. Attorney General of Alabama, 934 F.2d 295, 300-01 (11th Cir. 1991) (laches doctrine not applicable to almost eighteen-year delay in filing habeas petition where state failed to prove particularized prejudice from the delay); Davis v. Dugger, 829 F.2d 1513, 1519 (11th Cir. 1987) ("Accordingly, none of our prior decisions upholding [Habeas] Rule 9(a) [laches] dismissals have involved delays of less than fifteen years between sentencing and the filing of the federal habeas petition.").

15

enacted legislation required.  Those prisoners had not known that they were required to file within a year, because the law in effect when they had failed to file promptly permitted them to delay filing for years.  In Goodman (for federal prisoners) and Wilcox (for state prisoners), we held that the one-year limitations period should start running from the date of enactment of the new legislation, if the conviction being challenged had occurred more than a year before that enactment date.  We did not apply the new limitations periods to cases where the period for filing had expired before the new requirement was enacted, because "[i]t would be unfair and impermissibly retroactive" to cut off review for noncompliance with a rule that had not existed when the noncompliance occurred.  Wilcox, 158 F.3d at 1211; Goodman, 151 F.3d at 1337.  Other circuits reached the same conclusion. See Duncan v. Walker, ___U.S. ___, 121 S. Ct. 2120, 2130 (2001) (Stevens, J., concurring) ("In the context of AEDPA's 1-year limitations period, which by its terms runs from 'the date on which the judgment became final,' see §2244(d)(1)(A), the Courts of Appeals have uniformly created a 1-year grace period, running from the date of AEDPA's enactment, for prisoners whose state convictions became final prior to AEDPA.").

At first glance, it would seem that our Goodman and Wilcox decisions are authority for the proposition that the existence of our Smith v. White precedent

16

makes is "unfair and impermissibly retroactive" to apply <u>Boerckel</u> to the petitioner in this case. But the analogy is only a rough one at best, and too rough a one to provide an answer to the issue before us. <u>Goodman</u> and <u>Wilcox</u>, and the other circuits' decisions reaching the same conclusion, are not about procedural default and have nothing to do with the cause requirement for lifting a procedural bar. They are instead legislative interpretation cases, which apply the law set out in <u>Landgraf v. USI Film Prods.</u>, 511 U.S. 244, 270, 114 S. Ct. 1483, 1499 (1994), for determining whether a legislative enactment was retroactively applicable when Congress did not expressly specify its intent one way or the other. That is, after all, the issue <u>Goodman</u> and <u>Wilcox</u> address, they do apply the <u>Landgraf</u> principles, and they rely upon decisions of other circuits that expressly cite and discuss <u>Landgraf</u>.[9] This case is different. It is not about the application of a new statutory rule, but instead is about the application of a new decisional rule and for that there is a different test. The Supreme Court emphatically held in <u>Harper</u> that its civil and criminal decisions are to be given full retroactive effect "as to all events, regardless of whether such events predate or postdate our announcement of the rule," and

_____

[9]<u>Goodman</u>, 151 F.3d at 1337, relied upon <u>United States v. Simmonds</u>, 111 F.3d 737, 745-46 (10th Cir. 1997), and <u>Calderon v. United States District Court for the Central District of California</u>, 128 F.3d 1283, 1287 (9th Cir. 1997), both of which explicitly discussed and applied the <u>Landgraf</u> standard for determining the retroactive application of statutes. <u>Wilcox</u>, 158 F.3d at 1211, relied upon <u>Goodman</u> and reiterated that decision's reliance upon <u>Calderon</u>.

regardless of "the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." 509 U.S. at 97, 113 S. Ct. at 2517 (marks, citation, and brackets omitted). The Supreme Court's application of its new rule to the Boerckel case itself requires that we apply that rule to this and all other pending cases. Nothing in Goodman or Wilcox could be or is to the contrary. Nor is there anything in those two decisions that is helpful on the issue of whether this petitioner's reliance on our 1983 Smith decision can serve as cause to excuse his procedural default.

Another of our decisions is, however, directly on point as to the cause issue in this case. In Brand v. Lewis, 784 F.2d 1515, 1517 (11th Cir. 1986), we held that failure to present some instances of ineffective assistance of counsel to the state courts is not a failure to exhaust state remedies that gives rise in federal court to a procedural bar of ineffective assistance claims based on those instances. Instead, from 1986 to 1992 it was the law of this circuit, expressed in the Brand decision, that a habeas petitioner presenting any claim of ineffective assistance in state court is enough to exhaust his state remedies and avoid a procedural bar as to any and all ineffectiveness claims he brings to federal court. But in 1992 that rule changed. In Footman v. Singletary, 978 F.2d 1207, 1209-11 (11th Cir. 1992), we held that the Supreme Court in Keeney v. Tomayo-Reyes, 504 U.S. 1, 7-10, 112 S. Ct. 1715,

1719-20 (1992), had effectively overruled our <u>Brand</u> decision and established as the law of the circuit the new rule that a habeas petitioner procedurally defaults any specific instances of ineffective assistance of counsel that he fails to present to the state courts.

During the six-year period while our <u>Brand</u> decision was the controlling law of the circuit, death row inmate Victor Kennedy litigated his state collateral petition raising an ineffective assistance claim. <u>Kennedy v. Herring</u>, 54 F.3d 678, 684 (11th Cir. 1995).[10] Relying upon our <u>Brand</u> decision, Kennedy did not raise in state court every specific allegation of ineffective assistance that he had. <u>Id.</u> After Kennedy's state collateral proceeding was over, this circuit's exhaustion of state remedies and procedural default rules applicable to ineffective assistance claims were changed by the Supreme Court's <u>Keeney</u> decision, as we recognized in our <u>Footman</u> decision. <u>See</u> <u>Kennedy</u>, 54 F.3d at 684 n.4.[11]

The district court held that the specific instances of ineffectiveness Kennedy had not raised in state court were not procedurally barred from federal habeas

[10]Kennedy actually filed his state collateral petition before our <u>Brand</u> decision was released, but he amended it more than a year after <u>Brand</u> was the law, <u>Kennedy v. State</u>, 545 So.2d 214, 215 (Ala. Crim. App. 1989), and for purposes of deciding his case, we assumed that he relied upon our <u>Brand</u> decision in failing to assert all of his ineffective assistance of counsel claims in his state collateral proceeding. <u>See</u> <u>Kennedy</u>, 54 F.3d at 684.

[11]Kennedy's state collateral petition was first denied in 1987, and again with new findings after remand in 1988, and that denial was affirmed in 1989. <u>See</u> <u>Kennedy v. State</u>, 545 So.2d at 216-18. The <u>Keeney</u> and <u>Footman</u> decisions were released in 1992.

19

review, because our Brand decision, which was the established circuit law at the time of the state collateral proceeding, was an external factor which caused his procedural default. Id. at 684. Kennedy argued that to us, contending Brand was adequate cause to excuse the procedural default which the later-established Keeney rule indicated he had unwittingly committed. Id. We accepted the district court's finding that Kennedy's state collateral counsel had relied upon our Brand decision, but held "this reliance could not be cause to excuse a state procedural default. Brand concerned federal exhaustion doctrine, not state procedural rules." Id. (emphasis in original). That is the reason we reversed the district court's grant of habeas relief to Kennedy on the ineffective assistance claim. Id. at 684, 686.

We have exactly the same situation in this case. Smith relied (we are assuming) upon the rule of our previous Smith decision, just as Kennedy (we assumed) relied upon the rule of our Brand decision. In both cases the Supreme Court issued a decision which effectively overruled our circuit's exhaustion and procedural default rule upon which the petitioner had relied. In each case, when the old rule was overturned and the new one announced there was no way the petitioner could go back and comply with the fresh requirement and thereby un-do the new-found procedural default. If Kennedy's reliance upon then-existing circuit precedent was not cause to excuse his procedural default, and the Kennedy

20

decision establishes it was not, then Smith's reliance upon then-existing circuit precedent is not either.

We are bound by the prior panel precedent rule to follow the Kennedy decision, and we do not have to decide what we might hold if we were writing on a clean slate. We do note, however, that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). It might be difficult to fit within that definition a subsequently overruled circuit decision that did not actually "impede" the effort to comply with any state court rule, but instead removed an incentive for compliance by indicating (erroneously) that a particular action was not necessary for federal habeas review purposes. Moreover, a holding that reliance upon prior law is cause would effectively make the applicability of Boerckel and some other Supreme Court habeas decisions "shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." Harper, 509 U.S. at 97, 113 S. Ct. at 2517 (marks, citation, and brackets omitted). The Supreme Court told us in Harper that is something not to be done. In any event, we do not write on a clean slate. Our

Kennedy decision, combined with the Supreme Court's Harper and Boerckel decisions, require the result we reach.

To summarize:  the Boerckel decision is retroactively applicable to all federal habeas proceedings which were not completed before that decision was announced; the scope of the Alabama Supreme Court's certiorari review is broad enough that the Boerckel rule applies to Alabama prisoners, which means that our prior decision in Smith v. White is no longer good law; and reliance by a habeas petitioner or his counsel upon the existence of our Smith decision is not adequate cause for having failed to comply with the Boerckel rule.

AFFIRMED.